JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Tiffany Wilson

**(b)** County of Residence of First Listed Plaintiff    Warren County, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Fernando I. Rivera, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102 215-545-7676

## DEFENDANTS

County of Northampton and
Department of Corrections of Northampton County

County of Residence of First Listed Defendant    Northampton County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against based on her sex .

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE
08/18/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| TIFFANY WILSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COUNTY OF NORTHAMPTON, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                             ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( X )

| | | |
|---|---|---|
| 08/18/2021 | | Plaintiff, Tiffany Wilson |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-689-4137 | rivera@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Belvidere, NJ 07823 _____

Address of Defendant: _____ 669 Washington Street, Easton, PA 18042 _____

Place of Accident, Incident or Transaction: _____ Easton, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/18/2021      _____      319009

                 *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Fernando I. Rivera _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 08/18/2021      _____      319009

                 *Attorney-at-Law / Pro Se Plaintiff*      *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

_____
                                             :
**TIFFANY WILSON**                           :
Belvidere, NJ 07823                          :
                                             :
                  Plaintiff,                 :
                                             :
        v.                                   :      **CIVIL ACTION NO.**
                                             :
**COUNTY OF NORTHAMPTON**                    :
669 Washington Street                        :
Easton, PA 18042                             :
                                             :
                  and,                       :
                                             :
**DEPARTMENT OF CORRECTIONS**                :
**OF NORTHAMPTON COUNTY**                    :
669 Washington Street                        :
Easton, PA 18042                             :
                                             :
                  Defendants.                :      **JURY TRIAL DEMANDED**
_____:

## <u>COMPLAINT</u>

## I.    <u>INTRODUCTION</u>

Plaintiff, Tiffany Wilson ("Plaintiff"), brings this action against her former employer, County of Northampton and Department of Corrections of Northampton County (collectively, "Defendants") for unlawful discrimination based on her sex and retaliation because of her complaints of sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.  § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S.  § 951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory and punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate under applicable federal and state law.

II.     **PARTIES**

1.      Plaintiff is an individual and a citizen of the state of New Jersey.

2.      Plaintiff is a female.

3.      Defendant County of Northampton is a public organization and citizen of Pennsylvania, with a principal place of business located in Easton, Pennsylvania. Defendant County of Northampton is funded through tax-payer monies, is tasked with the legislative and executive functions involved in the oversight and regulation of property and finances that are within and involving the areas falling within Northampton County, Pennsylvania.

4.      Defendant Department of Corrections of Northampton County is a public organization and citizen of Pennsylvania, with a principal place of business located in Easton, Pennsylvania.

5.      Northampton County controls and directs the Department of Corrections of Northampton County, including in connection with funding and salaries for its employees.

6.      At all times material hereto, Plaintiff was paid by Northampton County.

7.      Defendants are engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

8.      At all times material hereto, Defendants acted as an "employer" of Plaintiff within the meaning of the statutes which form the bases of this matter.

9.      At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the statutes which form the bases of this matter.

10.     At all times material hereto, Defendants employed more than fifteen (15) employees.

11.     At all times material hereto, Defendant acted by and through its authorized agents,

servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business interests.

**III.    JURISDICTION AND VENUE**

12.    The causes of action which form the basis of this matter arise under Title VII and the PHRA.

13.    The District Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(a), in that the Plaintiff is a citizen of New Jersey and Defendant is a citizen of Pennsylvania and the amount in controversy exceeds $75,000, exclusive of interest and costs, and 28 U.S.C. § 1331, in that Plaintiff has alleged violations of federal law.

14.    The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. § 1331 and § 1332.

15.    The District Court has jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. § 1332 and § 1367.

16.    Venue is proper in the District Court under 28 U.S.C. §1391(b).

17.    On October 31, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein (the "Complaint"). The Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit A is a true and correct copy of the Complaint (with personal identifying information redacted).

18.    More than 1 year has passed since Plaintiff filed his Complaint of Discrimination with the PHRC and EEOC.

19.    On or about May 21, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue

for the Complaint (the "Notice"). Attached hereto, incorporated herein, and marked as Exhibit B is a true and correct copy of the Notice (with personal identifying information redacted).

20.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

21.     Plaintiff was hired by Defendants in or about October 22, 2018.

22.     At the time of her separation from Defendants on July 27, 2020, Plaintiff held the position of Corrections Officer.

23.     As a Corrections Officer, Plaintiff directly reported to Lieutenant Mark Williams ("Williams") (male); Williams reported to Captain Jason Werley ("Werley") (male).

24.     During her employment with Defendants, Plaintiff was one of approximately 15 female Correction Officer employees out of approximately 200 Correction Officer employees reporting indirectly to Werley.

25.     Defendants have an underrepresentation of female employees, particularly in high-level positions, such as Lieutenant and Captain.

26.     Beginning in or about February of 2019, on an ongoing basis, Plaintiff was subjected to a hostile work environment at Defendant based on her sex, which included, but was not limited to, being subjected to unwelcome, harassing, and offensive comments and conduct by Kristan Camacho ("Camacho") (male), Corrections Officer, who wanted to have a personal and sexual relationship with Plaintiff. For example:

        a.      Sending Plaintiff text messages of a personal nature and asking Plaintiff to go out with him for drinks after work;

      b.      Repeatedly making comments about her physical appearance, including commenting that Plaintiff looked "great" and telling her that he could tell that she was working out;

      c.      Watching Plaintiff on the security cameras at work;

      d.      Telling Plaintiff that she should go on vacations with him to Florida;

      e.      Repeatedly calling Plaintiff outside of work on her personal cell phone, despite Plaintiff's requests that he stop;

      f.      Repeatedly talking about taking Plaintiff out, despite Plaintiff continuously rejecting his requests;

      g.      Telling Plaintiff that he should come over to her house and stating that he was great with kids and could help Plaintiff out, because she was a single parent;

      h.      Working overtime hours so he could work extra shifts when Plaintiff was; and

      i.      Taking his work breaks when Plaintiff did.

27.      On numerous occasions, Plaintiff rejected Camacho's advancements and asked him to stop calling her and to leave her alone.

28.      When Plaintiff rejected Camacho's advances, Camacho would become upset.

29.      Despite Plaintiff's objections and rejections, Camacho did not stop his harassing comments and conduct.

30.      On or about February 19, 2019, in a meeting with Captain David Collins ("Collins") (male), Plaintiff subjected written incident reports complaining of Camacho's sex discriminatory conduct (the "February 19th Meeting").

31.    During the February 19th Meeting, Plaintiff complained that Camacho was trying to have a personal and sexual relationship with her, and that Plaintiff felt powerless as a female in a male-dominated industry.

32.    During the February 19th Meeting, Plaintiff complained to Collins that Camacho's sex-based comments and conduct toward her had been going on for some time but that she was afraid to report it because she was a new employee at Defendants.

33.    During the February 19th Meeting, Plaintiff complained to Collins that Camacho made her feel uncomfortable and nervous.

34.    In response to Plaintiff's complaints of sex discrimination, Collins accused Plaintiff of responding to Camacho's text messages and did not appear to take her sex discrimination complaints seriously.

35.    Defendants failed to remedy or prevent the sex discrimination to which Plaintiff was subjected.

36.    In or around April of 2019, Camacho approached Plaintiff and asked her if she made a complaint about him.

37.    Plaintiff responded by telling Camacho that she made a complaint against him because she was feeling uncomfortable with his comments and conduct towards her.

38.    In or around April of 2019, Camacho sent an Edible Arrangements fruit bouquet to Plaintiff's house.

39.    In or around April of 2019, after Plaintiff's complaint of sex discrimination to Collins, Camacho's unwelcome, harassing, and offensive conduct continued. For example:

         a.    Physically touching Plaintiff's shoulder and the back of her neck;

         b.    Running his hands through Plaintiff's hair; and

      c.     Placing his hand on Plaintiff's upper back and sliding it down to her lower back.

40.     In or around April of 2019, Eric Slack ("Slack") (male), Corrections Officer, commented to Orlando Rivera ("Rivera") (male), Corrections Officer, how weird it was that Camacho placed his hand on Plaintiff's upper back and slid it down to her lower back.

41.     On April 19, 2019, Camacho followed Plaintiff around at work and continued to come toward her and aggressively backed her into a corner.

42.     Officer Camacho returned to Plaintiff's office later that day and put her water jug down on her desk and pulled up a chair next to her desk, trapping her in her office; the only way to get out was to walk by Camacho but in a very close manner, which Plaintiff felt uncomfortable doings.

43.     In response, Plaintiff put her hand out in front of her to stop him from coming closer to her and continued to tell him to back up and stop cornering her.

44.     On April 27, 2019, Camacho watched Plaintiff put on ChapStick, and stated to her: "let me get some, but not from the container."

45.     Plaintiff understood that Camacho wanted to kiss her, and she rejected his advances.

46.     On April 27, 2019, following his latest acts of harassment, Camacho again approached Plaintiff in her office and was persistent in trying to hold a conversation with her as she was working.

47.     Camacho was making it difficult for Plaintiff to work by playing with items on her desk or trying to touch her shoulders and her hair.

48.     After Camacho left Plaintiff's office, Brittany Boreli ("Borelli") (female), Corrections Officer, came into Plaintiff's office and asked what Camacho was doing.

49.     Plaintiff told Borelli that she had complained about Camacho due to his sex-based comments and conduct toward her, and that he would not stop and leave her alone.

50.     Borelli told Plaintiff that she had noticed that he was "really all over [Plaintiff] and would not leave [Plaintiff] alone."

51.     On Plaintiff's way back to her office from a "round" (the act of walking through and surveilling a prison unit) Camacho walked toward her and commented that she went on her round without him.

52.     On or about April 27, 2019, as Plaintiff walked past Camacho in the hallway, Camacho turned toward her and smacked her buttocks.

53.     Plaintiff quickly walked away from Camacho, as she was in too much shock to know how to respond, and Camacho laughed and stated, "it is not that serious, I was just messing with you."

54.     On April 27, 2019, Camacho called Plaintiff from an unrecognized number on her personal cell phone, asking her if she was upset.

55.     On or about May 6, 2019, in a meeting with Williams, after he returned from vacation, Plaintiff complained of Camacho's continued sex discriminatory and retaliatory conduct (the "May 6th Meeting").

56.     During the May 6th Meeting, Plaintiff complained of all the incidents that occurred since her February 2018 complaint about Camacho, including that he slapped her on her buttocks.

57.     During the May 6th Meeting, Williams pulled up video footage showing the incident in which Camacho slapped Plaintiff on her buttocks.

58.     At the end of the May 6th Meeting, Williams stated to Plaintiff that Camacho was not going to remain employed with Defendants.

59.     On or about May 20, 2019, in a meeting with Elizabeth Kelly ("Kelly") (female), Human Resources Director, Plaintiff submitted a written incident report and complained of Camacho's sex discriminatory and retaliatory conduct.

60.     Plaintiff complaint to Kelly included that Camacho slapped her on her buttocks and engaged in retaliation and sex-based comments and conduct toward her, outlining all of the incidents alleged herein.

61.     Kelly stated to Plaintiff that Camacho's behavior was unacceptable and that it would not be tolerated.

62.     In or around June of 2019, Defendants placed Camacho on a paid administrative leave for approximately 2 months.

63.     While Camacho was on paid administrative leave, Plaintiff heard that employees were spreading rumors that Camacho and Plaintiff had a sexual relationship.

64.     While Camacho was on paid administrative leave, Plaintiff heard that employees were stating that she could not be trusted, and that she was getting male employees fired.

65.     As a result of her complaints against Camacho, male employees began ignoring Plaintiff and excluding her from conversations at work.

66.     In response to the rumors and ongoing discriminatory and retaliatory conduct of Plaintiff's male peers, female employees told Plaintiff that sex-based comments and conduct were normal at Defendants, that Camacho would not get fired, and that if female employees,

including Plaintiff, wanted to keep their jobs, they "just have to get over it and have a thick skin."

67.    In or around early-August of 2019, Plaintiff complained to Kelly that she was upset and uncomfortable with how Defendants handled her complaints, and that she was afraid for her safety because Camacho knew where she lived, as evidenced by him sending Plaintiff an Edible Arrangements fruit bouquet to her home.

68.    Plaintiff told Kelly that she was planning to move out of her current apartment, to which Kelly responded that it was a good idea.

69.    On August 13, 2019, Kelly informed Plaintiff that Camacho would be returning to work at Defendants.

70.    On August 13, 2019, Defendants issued to Plaintiff a Directive entitled "Direction for personal safety."

71.    Kelly told Plaintiff that she was issued the Directive "[f]or [Plaintiff's] protection."

72.    The Directive stated the following:

In order to eliminate the risk of any violation of County Policy 3.102, Unlawful Harassment Prevention, which includes sexual harassment, occurring toward you by Corrections Officer Kristian Camacho, you are hereby directed to comply with the following directive: 1. Do not have any unnecessary verbal contact or communication with Corrections Officer Kristian Camacho. Unnecessary contact includes any conversation, text messages, email, or other communication by any means that is friendly or social in nature. Unnecessary contact also includes any such communication that is not absolutely required in order to preform your work duties. 2. Although it is expected that there is no reason that you will have any physical contact with Officer Camacho, you are hereby directed to use your best efforts to avoid unnecessary physical contact with Officer Camacho. The workplace includes all County buildings, parking lots, walkways and other areas in or near where work is performed.

73.     The Directive stated that Defendants "hope that [Camacho and Plaintiff] can both continue to work at [Defendants] without any violation of the County's unlawful Harassment Policy, No. 3.102 or any inappropriate contact."

74.     In or around August or September of 2019, Plaintiff was told that Camacho was talking about her to other employees and joking about slapping her "ass," stating that he got a paid vacation out of it.

75.     In or around August or September of 2019, male employees, including Barry Mlodossich ("Mlodossich") (male), Corrections Officer, John Cronce ("Cronce") (male), Corrections Officer, and Rivera (male), commented to Plaintiff: "Hey, Wilson, I'm looking for a vacation, can I slap your ass?" or words to that effect.

76.     In or around August or September of 2019, male employees, including Mlodossich, Cronce, and Rivera, commented to Plaintiff: "I don't blame Camacho, I would have slapped your ass too," or words to that effect.

77.     Upon information and belief, other female employees have been subjected to sex-based comments and conduct at Defendants. For example, female employees were stalked by male employees, are subjected to comments about their bodies and physical appearance, asked to have "threesomes," and subjected to sexual comments about what things the male employees want to do to the female employees to them. Additionally, certain male employees have reputations for forcing themselves on female employees.

78.     Upon information and belief, on at least three occasions, other women have made complaints against Camacho alleging sexual harassment towards themselves or others.

79.     When female employees have complained of sex discrimination, Defendants have been dismissive of the complaints.

80.     Defendants have failed to remedy or prevent a culture of sex discrimination at Defendants.

81.     On several occasions in late-2019 and early-2020, Plaintiff complained to Lieutenants Scott Goldy ("Goldy") (male), Daniel VanArsdale ("VanArsdale") (male), and Ryan Dragotta ("Dragotta") (male), her supervising Lieutenants, about the discriminatory and retaliatory conduct that she was being subjected to, including, but not limited to, that Camacho and other male employees were spreading false rumors of a sexual nature about her; that she was being treated differently by her male peers, including being ignored and excluded from conversations; that she was being scheduled for unfavorable work posts (*e.g.*, maximum security female units); and that she was the only Corrections Officer who was denied a taser despite being assigned to Defendants' tactical team (C.E.R.T. Team).

82.     In response to her complaints, Plaintiff was told that she should just move pass the incidents, because Defendants could not do anything about it and would not look into rumors and hearsay.

83.     Defendants failed to remedy or prevent the sex discrimination and retaliation to which Plaintiff was subjected.

84.     On July 27, 2020, Plaintiff submitted a letter to Lieutenants Goldy, VanArsdale, and Dragotta, via email, notifying them that she was ending her employment with Defendants because of the ongoing discriminatory and retaliatory conduct, and Defendant's failure to remediate same (the "July 27th Letter").

85.     Defendants did not respond to the allegations of discrimination and retaliations in Plaintiff's July 27th Letter.

86.     Plaintiff's sex was a motivating and/or determinative factor in Defendants'

discriminatory and retaliatory treatment of Plaintiff, including, but not limited to, the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendants, and constituted a continuing violation.

87.     Plaintiff's complaints of sex discrimination and retaliation were a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including, but not limited to, the hostile work environment to which Plaintiff was subjected, which caused Plaintiff to terminate her employment with Defendants, and constituted a continuing violation.

88.     Plaintiff's rejections of Camacho's sexual advancements were a motivating and/or determinative factor in Defendants' retaliatory treatment of Plaintiff, including, but not limited to, the hostile work environment to which Plaintiff was subjected which caused Plaintiff to terminate her employment with Defendants, and constituted a continuing violation.

89.     The retaliatory actions taken against Plaintiff after she engaged in protected activity, including, but not limited to, the hostile work environment to which Plaintiff was subjected, would discourage a reasonable employee from complaining of discrimination at Defendants, and constituted a continuing violation.

90.     Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory conduct.

91.     The discriminatory and retaliatory conduct of Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

92.     As a direct and proximate result of Defendants' discrimination and retaliation, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

93.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights, which warrants the imposition of punitive damages against Defendants.

**COUNT I**
**(VIOLATION OF TITLE VII)**

94.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

95.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

96.     Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

97.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

98.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

99.     No previous application has been made for the relief requested herein.

**COUNT II**
**(VIOLATION OF THE PHRA)**

100.     Plaintiff incorporates the paragraphs above as if set forth herein in their entirety.

101.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants violated the PHRA.

102.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

103.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

104.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

    a.    declaring the acts and practices complained of herein to be a violation of Title VII and the PHRA;

    b.    enjoining and restraining permanently the violations alleged herein;

    c.    awarding Plaintiff damages for back pay, front pay, and pre- and post-judgment interest;

    d.    awarding compensatory damages to Plaintiff for past and future emotional distress and pain and suffering under Title VII and the PHRA;

    e.    awarding Plaintiff the costs of this action, together with reasonable attorneys' fees;

    f.    awarding Plaintiff punitive damages under Title VII;

    g.    awarding Plaintiff such other damages as are appropriate under Title VII and the PHRA; and

    h.    granting such other and further relief as this Court deems appropriate.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By:     */s/ Fernando I. Rivera*
         FERNANDO I. RIVERA, ESQ.
         1525 Locust Street
         Philadelphia, PA 19102
         rivera@consolelaw.com
         (215) 545-7676

Dated: 8/18/2021                 *Attorneys for Plaintiff*

# Exhibit A

Received

OCT 31 2019

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                    :

**TIFFANY WILSON**               :              Docket No. 20190212(ol)

v.                               :

RESPONDENTS:                     :

**COUNTY OF NORTHAMPTON**        :

and                              :

**DEPARTMENT OF CORRECTIONS**    :
**NORTHAMPTON COUNTY**           :

1. The Complainant herein is:

   Name:          Tiffany Wilson

   Address:       redacted

                  Belvidere, NJ 07823

2. The Respondents herein are:

   Names:         County of Northampton; Department of Corrections
                  Northampton County

   Address:       669 Washington Street
                  Easton, PA 18042

3. I, Tiffany Wilson, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and retaliation because of my complaints of sex

discrimination, as set forth below.

## Discrimination and Retaliation

### A.  I specifically allege:

[1]        I was hired by Respondents in or about October 22, 2018.

[2]        I am a current employee of Respondents.

[3]        I consistently perform my job duties in a highly competent manner, and receive positive feedback.

[4]        I hold the position of Corrections Officer.

[5]        I report to Lieutenant Mark Williams (male).  Williams reports to Captain Jason Werley (male).

[6]        I am one (1) of approximately fifteen (15) female Correction Officer employees out of approximately two hundred (200) Correction Officer employees reporting indirectly to Werley.

[7]        Respondents have an underrepresentation of female employees, particularly in high-level positions.

[8]        Beginning in or about February 2019, I understood that Kristian Camacho (male), Corrections Officer, wanted to have a personal relationship with me.

[9]        I found Camacho's comments and conduct to be offensive, based on my sex, and contributing to the hostile work environment to which I was subjected.

[10]      In or about February 2019, Camacho began sending me text messages of a personal nature and asking me to go out with him for drinks after work.

[11]      I understood that Camacho wanted to have sex with me.

[12]      Camacho repeatedly made comments about my physical appearance.

[13]      Camacho commented that I looked "great."

[14]     Camacho commented that he could tell I have been working out.

[15]     Camacho watched me on the security cameras at work.

[16]     Camacho told me that I should go to Florida with him.

[17]     Camacho repeatedly called me on my cell phone.

[18]     Camacho routinely talked about taking me out, and commented about how I always tell him "no."

[19]     Camacho commented that he should come over to my house, stating that he was great with kids and could help me out, knowing that I was a single parent, and telling me that it did not have to be "weird."

[20]     Camacho told me that he could help me find a new apartment, stating that he had connections and he had contacted a friend about an apartment for me.

[21]     Camacho worked overtime hours when I was scheduled to work.

[22]     Camacho took his break when I took my break.

[23]     I asked Camacho to stop calling me.

[24]     I told Camacho to leave me alone.

[25]     When Camacho engaged in comments and conduct of a sexual nature, I objected; I rejected his advances.

[26]     When I rejected Camacho's advances, Camacho became upset.

[27]     Camacho did not stop his comments and conduct of a sexual nature, despite my objections and rejections.

[28]     On or about February 19, 2019, in a meeting with, and written incident report given to, Captain David Collins (male), I complained of sex discrimination in connection with Camacho.  I complained that Camacho was trying to have a personal relationship with me,

and that I felt powerless as a female in a male-dominated industry. I complained to Collins that Camacho's sex-based comments and conduct toward me had been going on for some time but I was afraid to report it because I was a new employee at Respondents. I complained that Camacho made me feel uncomfortable and nervous. Collins accused me of responding to Camacho's text messages, and did not appear to take my sex discrimination complaints seriously.

[29] Respondents failed to investigate my sex discrimination complaints.

[30] Respondents failed to remedy or prevent the sex discrimination to which I have been subjected.

[31] In or about April 2019, Camacho approached me and asked me if I made a complaint about him. I told him that I did because I was feeling uncomfortable with his comments and conduct toward me.

[32] Camacho sent an Edible Arrangements fruit bouquet to my house.

[33] Camacho placed his hand on my right shoulder, squeezed my shoulder, and then slid his hand to the back of my neck. I pulled away from him.

[34] Camacho ran his hands through my hair. I pulled away from him.

[35] Camacho came up behind me, placed his hand on my upper back and slid it down to my lower back. I pulled away from him. After roll call that day, Officer Eric Slack (male) told Officer Orlando Rivera (male) about how weird it was that Camacho placed his hand on my upper back and slid it down to my lower back, and Rivera asked me about it. I complained that Camacho was constantly doing uncomfortable things to me, and that he never took a hint.

[36]      On April 19, 2019, Camacho followed me around at work and continued to come toward me and aggressively back me into a corner. I put my hand out in front of me so stop him from coming closer to him, and continued to tell him to back up and stop cornering me.

[37]      On April 27, 2019, Camacho stood in my office doorway, blocking me from leaving. Camacho watched me put on Chap Stick, and stated to me: "let me get some, but not from the container." I understood that Camacho wanted to kiss me. I rejected his advances and told him to go away.

[38]      On April 27, 2019, following the above incident, Camacho again approached me in my office and was persistent in trying to hold a conversation with me as I was working. Camacho was making it difficult for me to work by playing with items on my desk or trying to touch my shoulders and my hair. Camacho kept interrupting me and trying to take away what I was working on. Camacho left my office and took my water jug with him. After he left, Officer Brittany Borelli (female) came into my office and asked what Camacho was doing. I stated that I had complained of Camacho, due to his sex-based comments and conduct toward me, and that he does not stop. Borelli told me that she had noticed that he was "really all over [me] and wouldn't leave [me] alone." When Officer Camacho came back to my office, he put my water jug down on my desk and pulled up a chair next to my desk, trapping me in my office; the only way to get out was to walk by him but in a very close manner, which I did not want to do. Camacho asked me to go do a "round" with him in the hallway. I told him no, and that I would do my round in a few minutes. I continued doing my work until he left my office, and then I went on my round. On my way back to my office, he turned the corner and walked toward me, commented that I went on rounds without him. As I walked toward him down the hallway, I had to turn away from him to pass him so that I did not touch him. As I passed him in the

hallway, he turned toward me and smacked my buttocks. I walked quickly away from him, as I was in too much shock to know how to respond. Camacho was laughing and stated; "it's not that serious, I was just messing with you."

[39]     On April 27, 2019, late that night, Camacho called me from an unrecognized number on my cell phone, asking me if I was upset. I ended the conversation with him.

[40]     On or about May 6, 2019, in a meeting with Williams, after he returned from vacation, I complained of sex discrimination in connection with Camacho. I complained that Camacho slapped me on my buttocks. Williams pulled up video footage showing Camacho slapping me on my buttocks. Williams was aware of my first sex discrimination complaint in connection with Camacho and stated that Camacho was not going to remain employed with Respondents.

[41]     On or about May 20, 2019, in a meeting with, and written incident report given to, Elizabeth Kelly (female), Human Resources Director, I complained of sex discrimination in connection with Camacho. I complained that Camacho slapped me on my buttocks and engaged in sex-based comments and conduct toward me. Kelly stated that this behavior was not acceptable and that it would not be tolerated.

[42]     Respondents failed to remedy or prevent the sex discrimination to which I have been subjected.

[43]     Respondents placed Camacho on a paid administrative leave for approximately two (2) months.

[44]     I heard that employees were spreading rumors that Camacho and I had a sexual relationship.

[45]    I heard that employees were stating that I could not be trusted, and that I was getting male employees fired.

[46]    Male employees ignored me and excluded me from conversations.

[47]    Female employees told me that sex-based comments and conduct were normal at Respondents, and that I Camacho would not get fired, and that if female employees, including me, wanted to keep our jobs, we "just have to get over it and have a thick skin."

[48]    I was interviewed three (3) times throughout the course of Respondents' investigation into my complaints.

[49]    Respondents failed to provide me with an investigative report following the investigation.

[50]    On multiple occasions, I requested from Kelly copies of my written sex discrimination complaints and Respondents' investigation report, and did not receive responses to my requests.

[51]    I again complained to Kelly that I was upset and uncomfortable with how Respondents handled my complaints, and that I was afraid for my safety because Camacho knew where I lived, as evidenced by him sending me an Edible Arrangements fruit bouquet to my home. I stated that I was planning to move out of my apartment. Kelly stated that was a good idea.

[52]    On August 13, 2019, Kelly informed me that Camacho would be retuning to work at Respondents.

[53]    On August 13, 2019, Respondents issued to me a Directive entitled "Direction for personal safety." Kelly told me that I was issued the Directive "[f]or [my] protection." Kelly told me that Respondents issued the same Directive to Camacho. The

Directive stated the following: "In order to eliminate the risk of any violation of County Policy 3.102, Unlawful Harassment Prevention, which includes sexual harassment, occurring toward you by Corrections Officer Kristian Camacho, you are hereby directed to comply with the following directive:  1.  Do not have any unnecessary verbal contact or communication with Corrections Officer Kristian Camacho.  Unnecessary contact includes any conversation, text messages, email, or other communication by any means that is friendly or social in nature. Unnecessary contact also includes any such communication that is not absolutely required in order to preform your work duties.  2.  Although it is expected that there is no reason that you will have any physical contact with Officer Camacho, you are hereby directed to use your best efforts to avoid unnecessary physical contact with Officer Camacho.  The workplace includes all County buildings, parking lots, walkways and other areas in or near where work is performed." The Directive stated that Respondents "hope that [Camacho and I] can both continue to work at [Respondents] without any violation of the County's unlawful Harassment Policy, No. 3.102 or any inappropriate contact."

[54]     Respondents issued a Directive to me because of my sex and/or my complaints of sex discrimination.

[55]     Camacho remains employed at Respondents.

[56]     I was told that Camacho was talking about me to other employees.

[57]     I was told that Camacho was joking about slapping my "ass," and that he got a paid vacation out of it.

[58]     I was told that Camacho stated he does not regret slapping my "ass."

[59]    Male employees, including Officer Barry Mlodossich (male), Officer John Cronce (male), and Officer Orlando Rivera (male), have commented to me: "Hey, Wilson, I'm looking for a vacation, can I slap your ass?"

[60]    Male employees, including Mlodossich, Cronce, and Rivera have commented to me: "I don't blame Camacho, I would have slapped your ass, too."

[61]    Male employees routinely comment on my body and my physical appearance.

[62]    Respondents have failed to remedy or prevent the sex discrimination and retaliation to which I have been subjected.

[63]    Respondents have subjected me to a hostile work environment because of my sex.

[64]    Respondents have subjected me to a hostile work environment because of my complaints of sex discrimination.

[65]    Female employees have been subjected to sex-based comments and conduct at Respondents. Female employees are stalked by male employees, are subjected to comments about their bodies and physical appearance, are asked to have "threesomes," and are subjected to comments about what things the male employees want to do to the female employees sexually, and certain male employees have reputations for forcing themselves on female employees.

[66]    When female employees have complained of sex discrimination, Respondents have been dismissive of the complaints.

[67]    Respondents have failed to remedy or prevent the culture of sex discrimination at Respondents.

[68]    Respondents have failed to remedy or prevent the culture of retaliation at Respondents.

[69]    Respondents' sex discriminatory and retaliatory conduct and comments have caused me emotional distress.

[70]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former similarly situated employees of Respondents who are female, and have been discriminated against based on sex, in connection with being subjected to a hostile work environment and/or failure to be promoted, and on behalf of myself and any and all current or former similarly situated employees of Respondents who have been retaliated against in connection with complaints of violation of Respondents' sexual harassment policy.**

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and retaliated against me because of my complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

        X        **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d)  **

        ____        Section 5.1 Subsection(s) _____

        ____        Section 5.2 Subsection(s) _____

_____        Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

5.        Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

        __X__        **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

6.        The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

10/30/2019
(Date Signed)

(Signature) Tiffany Wilson
redacted
Belvidere, NJ 07823

# Exhibit B

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL
                                                    *150 M Street, N.E.*
                                                    *Karen Ferguson , EMP, 4CON, Room 9.514*
                                                    *Washington, DC 20530*

                                                    May 21, 2021

Ms. Tiffany Wilson
c/o Fernando I. Rivera, Esquire
Console Mattiacci Law
1525 Locust Street, 9th Fl.
Philadelphia, PA  19102

Re:  EEOC Charge Against County of Northampton, et al.
     No. 17F202060112

Dear Ms. Wilson:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Pamela S. Karlan
                                        Principal Deputy Assistant Attorney General
                                           Civil Rights Division

                              by       /s/ Karen L. Ferguson
                                        Karen L. Ferguson
                                        Supervisory Civil Rights Analyst
                                        Employment Litigation Section

cc: Philadelphia District Office, EEOC
    County of Northampton, et al.